# Barbara and Michael Murray v. St. Michael's College and Donald Sutton

[667 A.2d 294]

No. 94-538

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 8, 1995

*David H. Greenberg*, Burlington, for Plaintiffs-Appellants.

*Paul K. Sutherland* and *Michael J. Harris* of *Sutherland & Collins, Inc.*, Burlington, for Defendants-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *Seth A. Steinzor*, Assistant Attorney General, Montpelier, for Amicus Curiae State of Vermont.

**Johnson, J.** Plaintiff Michael Murray, a former security officer for St. Michael's College, and his wife, Barbara Murray,* appeal the superior court's order granting defendants summary judgment on their claims that the College and plaintiff's supervisor (1) discriminated against plaintiff in retaliation for his filing a workers' compensation claim, (2) violated a covenant of good faith and fair dealing implied in his employment contract, and (3) intentionally caused him to suffer emotional distress. Plaintiff also contends that the court failed to address his claim that his supervisor tortiously interfered with his contractual relations with the College. We reverse in part and affirm in part.

## I.

From 1985 to 1993, plaintiff worked for defendant College as a security officer under the supervision of defendant Donald Sutton, the Director of Safety and Security. For the last four years of his employment with the College, he held the rank of sergeant. In May 1991, while working overtime during commencement events, plaintiff experienced swelling and discomfort in his left knee. As the result of that injury, he filed a workers' compensation claim and was out of work from late May until early September 1991. After conducting an investigation, the College's workers' compensation carrier denied plaintiff's claim in August 1991. Plaintiff appealed the denial to the Department of Labor and Industry and obtained a decision entitling him to workers' compensation benefits. Plaintiff alleges that during and after the period in which he applied for and received the benefits, defendants discriminated against him by badgering him to come back to work, changing his employment duties and responsibilities, requiring him to work night shifts in breach of a previous agreement, changing his work hours, giving him unfairly low job evaluations, and challenging his right to receive workers' compensation benefits.

---

*Barbara Murray joins her husband as a plaintiff in this action. She claims that, as a direct and proximate result of defendants' discriminatory actions, she suffered extreme pain, mental anguish, and loss of her husband's services, support, comfort, and care. To simplify matters, we refer to Michael Murray when we use the singular "plaintiff."

In May 1992, an incident between plaintiff and a graduate student led to disciplinary action against plaintiff. The student asked plaintiff, who had some experience repairing cars, if he was interested in repairing and possibly buying the student's car, which was not running. After working on the car, plaintiff told the student that it needed major repairs. He offered to help the student junk the car, saying he would need the title to dispose of the vehicle. After obtaining the title, plaintiff arranged to sell the car for $200. When the student heard about the sale, he complained to plaintiff's supervisor, who suspended plaintiff pending further decision. Four days later, Sutton demoted plaintiff from sergeant to patrol officer and placed him on probation for six months. Plaintiff appealed the decision, first to the Vice President of Administration and then to the President of the College, who upheld the demotion but ruled that it would run only for one year, at which time plaintiff would be eligible to be reappointed to sergeant.

Plaintiff never returned to work following his demotion. During the second half of 1992, plaintiff submitted letters from various doctors and psychiatrists stating that stress-induced depression prevented him from working. Plaintiff was fired as of March 5, 1993, after his short-term disability benefits ran out.

The Murrays filed suit against defendants in March 1993. On July 11, 1994, the superior court granted defendants' summary judgment motion, ruling that (1) plaintiff had failed to demonstrate that his demotion was retaliatory in nature, (2) defendants had come forward with sufficient evidence of a legitimate, nondiscriminatory reason for the demotion, (3) plaintiff's remaining allegations of discriminatory treatment were insufficient to establish a discrimination claim, and (4) plaintiffs' other claims arose directly from the discrimination claim and thus could not stand on their own. On July 22, 1994, plaintiffs filed a motion for reconsideration, which was denied on September 9, 1994. Plaintiffs filed a notice of appeal on October 5, 1994.

On appeal, plaintiff argues that the court erred in granting summary judgment to defendants because (1) his pleadings and affidavits demonstrate the existence of genuine issues of material fact as to whether defendants discriminated against him; (2) his claims of intentional infliction of emotional distress and of a violation of an implied covenant of good faith and fair dealing stand independently of the discrimination claim; and (3) the court failed to address his claim of intentional interference with contractual relations. Defendants counter by arguing that (1) this Court lacks jurisdiction to review the

trial court's July 11, 1994 ruling because plaintiff's motion for reconsideration was, in effect, a V.R.C.P. 60(b) motion, which does not toll the thirty-day period for filing a notice of appeal; (2) the court did not abuse its discretion in denying plaintiff's motion for reconsideration; and (3) in any event, the court did not err in granting their motion for summary judgment. The Attorney General has filed an amicus curiae brief, in which he takes no position on the merits of plaintiff's claims, but urges this Court to recognize that employees have a private right of action to bring suit alleging that their employer discriminated against them in retaliation for their filing a workers' compensation claim, in violation of 21 V.S.A. § 710.

## II.

At the outset, we reject defendants' argument that plaintiffs' appeal is untimely filed. Both the timing and contents of plaintiffs' motion for reconsideration indicate that it was, for all intents and purposes, a motion to alter or amend the judgment under V.R.C.P. 59(e), not a Rule 60(b) motion for relief from judgment. The motion was timely filed. See V.R.C.P. 59(e) (motion to alter or amend must be filed within ten days of judgment); V.R.C.P. 6(a) (when period prescribed is less than eleven days, intermediate Saturdays and Sundays are excluded from computation). Therefore, the time period for filing an appeal of the July 11, 1994 order was tolled pending a ruling on the motion. V.R.A.P. 4; see *Osborn v. Osborn*, 147 Vt. 432, 433, 519 A.2d 1161, 1162–63 (1986) (Rule 59(e) motion suspends finality of judgment, allowing trial court to revise initial judgment if necessary).

## III.

Defendants first argue that plaintiffs' discrimination claim should be barred because this Court has not recognized a private cause of action for monetary damages based upon an alleged violation of 21 V.S.A. § 710(b), which provides that "[n]o person shall discharge or discriminate against an employee from employment because such employee asserted a [workers' compensation] claim . . . ." We conclude that a private right of action under § 710 is appropriate.

Although generally an at-will employment contract may be terminated by either party to the contract at any time with or without cause, *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 18, 665 A.2d 580, 584

(1995), this Court has recognized an exception to this general rule when the employer's alleged actions contravene clear and compelling public policy. *Jones v. Keogh*, 137 Vt. 562, 564, 409 A.2d 581, 582 (1979); see *Payne v. Rozendaal*, 147 Vt. 488, 494, 520 A.2d 586, 589 (1986) (discharge of employee solely on basis of age is practice so contrary to society's concerns for providing equity and justice that there is clear and compelling policy against it; therefore, at-will employee may bring wrongful discharge claim in such situation). Under this exception, the great majority of courts have recognized the tort of retaliatory discharge for filing a workers' compensation claim. 2A A. Larson, The Law of Workmen's Compensation § 68.36(a), at 284–307 (1995); see *Niesent v. Homestake Mining Co.*, 505 N.W.2d 781, 783 (S.D. 1993) (citing cases so holding). The reasoning behind this holding is best summed up in the leading case, *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425, 427 (Ind. 1973):

> The [Workmen's Compensation] Act creates a *duty* in the employer to compensate employees for work-related injuries (through insurance) and a *right* in the employee to receive such compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right. Employees will not file claims for justly deserved compensation — opting, instead, to continue their employment without incident. The end result, of course, is that the employer is effectively relieved of his obligation.

(Emphasis in original.)

We agree with the Indiana Supreme Court's holding that employees have a private right of action when an employer allegedly discharges them or discriminates against them for filing a workers' compensation claim. Workers' compensation law represents a public policy compromise in which "the employee gives up the right to sue the employer in tort in return for which the employer assumes strict liability and the obligation to provide a speedy and certain remedy" for work-related injuries. *Lorrain v. Ryan*, 160 Vt. 202, 214, 628 A.2d

543, 551 (1993). Allowing employers to undermine this important public policy objective is unacceptable. We are not dissuaded by the fact that § 710(c) gives the Attorney General the discretion to seek civil penalties against employers who retaliate against employees for filing workers' compensation claims. Retaliatory discrimination by an employer constitutes both a public and a private wrong, each of which is entitled to vindication. *Lally v. Copygraphics*, 428 A.2d 1317, 1318 (N.J. 1981). The limited and discretionary remedies in § 710 will be further augmented by the employee's right to obtain civil redress. *Id.*; see 2A A. Larson, *supra*, § 68.36(b), at 313–14 (majority holding is that remedy created by retaliatory discharge statute is not exclusive, whether that remedy is civil, criminal, or administrative); *Wal-Mart Stores, Inc. v. Baysinger*, 812 S.W.2d 463, 467 (Ark. 1991) (rejecting argument that because workers' compensation statute does not provide civil remedy, employee has no private right of action based on retaliatory discharge for filing workers' compensation claim); *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978) (same); *Brown v. Transcon Lines*, 588 P.2d 1087, 1094–95 (Or. 1978) (allowing employees to file civil tort suit notwithstanding statute granting commissioner discretionary power to investigate and act on complaints of retaliation for filing workers' compensation claims).

## IV.

Next, plaintiffs argue that the court erred by granting summary judgment to defendants on the discrimination claim. To withstand summary judgment regarding his claim that he was discriminated against for filing a workers' compensation claim, plaintiff was required to present a prima facie case of retaliatory discrimination, namely, that (1) he was engaged in a protected activity, (2) his employer was aware of that activity, (3) he suffered adverse employment decisions, and (4) there was a causal connection between the protected activity and the adverse employment decision. *Gallipo v. City of Rutland*, 163 Vt. 83, 89, 92, 656 A.2d 635, 640, 642 (1994). Once plaintiff established a prima facie case of retaliatory discrimination, defendants were required to articulate some legitimate, nondiscriminatory reason for the challenged conduct; if defendants articulated such a reason, plaintiff was required to prove that the reason was a mere pretext. *Sprague v. University of Vermont*, 661 F. Supp. 1132, 1140 (D. Vt. 1987).

Here, the superior court ruled that defendants did articulate a legitimate, nondiscriminatory reason for plaintiff's demotion — the

incident involving the student's car — and that plaintiff's remaining allegations of discrimination were insufficient to establish a claim of discrimination. In support of the latter conclusion, the court stated that (1) defendants' initial refusal to process plaintiff's workers' compensation claim was negated by the fact that plaintiff ultimately received the benefits, and (2) Sutton's badgering of plaintiff, changing his shift, and expressing doubt regarding the severity of his injuries did not amount to discrimination. We agree with plaintiff that the court placed excessive emphasis on the demotion and not enough on the various other alleged acts of discrimination.

Among other things, plaintiff alleged by affidavit that (1) Sutton expressed anger and frustration over plaintiff's decision to apply for workers' compensation benefits and over the length of time plaintiff was away from work; (2) a College official tried to persuade plaintiff to drop his appeal of the initial denial of benefits; and (3) upon plaintiff's return to work, Sutton reduced his duties, required him to work the night shift in violation of a prior agreement, and began giving him unfairly low job evaluations. Plaintiff alleges that these and other actions initiated by Sutton and the College demonstrate a pattern of harassing behavior designed to induce plaintiff's departure. Plaintiff also challenges the court's conclusion that his demotion was not the result of disparate treatment. He points out that in his motion for reconsideration he cited testimony in his deposition that other security officers were disciplined more leniently for what he believed to be more egregious conduct.

There is no dispute that plaintiff was engaged in a protected activity — filing a workers' compensation claim — and that defendants were aware of this activity. Defendants state only that the President of the College, who reviewed the demotion decision, was unaware that plaintiff had filed a workers' compensation claim. Further, plaintiff alleges various employment decisions by defendants that followed the filing of his workers' compensation claim and led to his work disability — reduction of duties and responsibilities, issuance of unsatisfactory work evaluations, assignment to the night shift, and demotion for an allegedly minor infraction. These actions, if undertaken as alleged, are plainly adverse, and thus support his claim of discrimination, notwithstanding defendants' contention that an employee must suffer a loss of employment, promotion, or key benefits before a cause of action arises under § 710(b). See 21 V.S.A. § 710(b) (no person shall "discharge *or* discriminate" against employee for asserting workers' compensation claim).

■ In response to these alleged adverse decisions, defendants offer a legitimate, nondiscriminatory reason only for the disciplinary action resulting from the car-transfer incident. Thus, although defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's being disciplined, genuine issues of material fact remain concerning whether plaintiff was discriminated against for filing a workers' compensation claim, and whether the severity of the disciplinary action resulting from the car-transfer incident was the result of discriminatory disparate treatment. The timing of the alleged actions against plaintiff, relative to his filing of the workers' compensation claim, is a sufficient showing, for purposes of surviving summary judgment, of a causal connection between the protected activity and the adverse employment decisions. See *Gallipo*, 163 Vt. at 93, 656 A.2d at 642 (for purposes of prima facie case, plaintiff may establish link between protected activity and adverse employment decision by showing that timing of complaint and retaliatory action was suspect). Accordingly, the superior court's order granting defendants summary judgment must be reversed.

## V.

We now consider the two claims dismissed by the superior court as derivative of plaintiff's dismissed discrimination claim. First, plaintiff's implied-covenant-of-good-faith claim alleges that defendants' discriminatory actions in retaliation for his filing a workers' compensation claim violated the covenant of good faith and fair dealing implied in his employment contract. Because the bases of this claim are essentially the same as those supporting plaintiff's actionable discrimination claim under § 710(b), the claim is superfluous, and thus we uphold its dismissal. Cf. *Ross*, 164 Vt. at 23, 665 A.2d at 586 (declining to recognize implied covenant of good faith and fair dealing as means of recovery where there is unmodified at-will employment relationship and employee is challenging dismissal based on right to tenure, as opposed to accrual of benefits). Second, we conclude that the alleged actions of the plaintiff's supervisor and employer, if taken as true, are not sufficiently extreme and outrageous, as a matter of law, to amount to intentional infliction of emotional distress. See *Gallipo*, 163 Vt. at 95, 656 A.2d at 643 (issuance of reprimand letters and assignment to "detail" chores normally assigned to junior firefighters failed to meet plaintiff's heavy burden of demonstrating that defendants' conduct was so outrageous as to surpass all possible bounds of decency); *Denton v. Chittenden Bank*, 163 Vt. 62, 66–67, 655

A.2d 703, 706 (1994) (mere insults and indignities in workplace generally do not rise to level of outrageous conduct necessary to prevail on claim of intentional infliction of emotional distress).

## VI.

Next, we address plaintiff's claim of tortious interference with a contract, which is directed against Mr. Sutton. "This tort provides protection even to contracts terminable at will." *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 268, 583 A.2d 583, 589 (1990). Further, the tort is applicable in limited situations against other employees or officers of the plaintiff's employer, the key factor being whether the defendants were acting outside the scope of their employment to further their own interests. See *Lyon v. Bennington College Corp.*, 137 Vt. 135, 138–39, 400 A.2d 1010, 1012–13 (1979) (faculty member's claim against officers of college for inducing college to break its contract with him presented viable tort claim; factual determination as to whether defendants acted within scope of employment when doing alleged acts must be determined at trial). See generally Annotation, *Liability of Corporate Director, Officer, or Employee for Tortious Interference with Corporation's Contract with Another*, 72 A.L.R.4th 492 (1989) (stating circumstances in which courts have allowed plaintiffs to bring contractual interference suits against other employees of plaintiffs' employer); Restatement (Second) of Torts § 767 (1979) (stating factors for court's consideration in determining whether defendants' actions are "improper" so as to make defendants liable under contractual interference claim). Nevertheless, summary judgment in favor of Sutton is appropriate here because of the absence of any allegation by plaintiff that Sutton acted outside the scope of his employment or in his own personal interest in dealing with plaintiff. See *Kelley v. City of Mesa*, 873 F. Supp. 320, 333 (D. Ariz. 1994) (defendants entitled to summary judgment on contractual interference claim because plaintiff employee did not provide any evidence from which court could infer that defendant employees were acting individually rather than in their official capacity); cf. *Ross*, 164 Vt. at 25, 665 A.2d at 587 (no error in granting summary judgment for defendant supervisor on contractual interference claim where plaintiff failed to state cause of action).

## VII.

Finally, because plaintiff has a viable discrimination claim against defendants, his wife's derivative claim for lack of consortium is not

barred by the exclusivity provision of the workers' compensation act. Cf. *Lorrain*, 160 Vt. at 215, 628 A.2d at 551 (no rational basis exists for allowing injured party's tort claim while denying spouse's loss-of-consortium claim); *Derosia v. Book Press, Inc.*, 148 Vt. 217, 220, 531 A.2d 905, 907 (1987) (since injured employee was barred from bringing tort action under 21 V.S.A. § 622, his wife's derivative loss-of-consortium claim is similarly barred). On the other hand, Barbara Murray's intentional-infliction-of-emotional-distress claim cannot survive summary judgment for the same reason that her husband's claim fails.

*Summary judgment is reversed with respect to plaintiff Michael Murray's discrimination claim and plaintiff Barbara Murray's loss-of-consortium claim. Summary judgment is affirmed with respect to plaintiffs' other claims.*