*Guyon v. Intake Advantage, Inc.*, No. 327-7-13 Wmcv (Wesley, J., July 22, 2015)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT                                                    CIVIL DIVISION
Windham Unit                                         Docket No. 327-7-13 Wmcv

---

| Guyon vs. Intake Advantage, Inc. |
|---|

## ENTRY REGARDING MOTION

Count 1, Breach of Contract/Unlawful Emp. Termina (327-7-13 Wmcv)

Title:          Motion for Summary Judgment (Motion 19)
Filer:          Intake Advantage, Inc.
Attorney:    Stephen D. Ellis
Filed Date:  December 2, 2014

Response filed on 01/07/2015 by Attorney Stephen D. Ellis for Defendant Intake Advantage, Inc.
Response filed on 05/28/2015 by Attorney Stefan Ricci for Plaintiff Anne L. Guyon
Response filed on 06/12/2015 by Attorney Stephen D. Ellis for Defendant Intake Advantage, Inc.

**The motion is GRANTED.**

### INTRODUCTION

Plaintiff Anne Guyon has filed claims for breach of contract and unlawful discrimination against her former employer, Defendant Big Voodoo Interactive (named here as Defendant Intake Advantage, Inc.). Plaintiff claims she was unlawfully discriminated against as a result of filing a workers' compensation claim and that Defendant failed to provide Plaintiff with all compensation she was due according to her employment agreement. Now before the Court is Defendant's motion for summary judgment, as well as its motion for spoliation sanctions, and its motion for judgment as a matter of law on its counterclaim for wrongful conversion.

### UNDISPUTED FACTS

Plaintiff was hired as a staff writer by Defendant Big Voodoo Interactive ("BVI") in January of 2012. See Email, 1/14/2013, Def's Ex. B, 1. Plaintiff and Defendant initially agreed that Plaintiff would work 32 hours per week; she later moved to full time. See Emails, 7/6/2013, Def's Ex. B, 5–6.  Plaintiff was permitted to work predominantly from her home in Saxtons River, Vermont. She would only travel to BVI's office in Northampton, Massachusetts for occasional meetings. On January 23, 2012, Plaintiff signed an Employee Handbook Acknowledgement, confirming that Plaintiff had received and understood the Employee Policy Manual and that she understood she was an employee at-will. See Acknowledgement, Def's Ex. C; see also Guyon Deposition, Def's Ex. D, 84. There was no formal employment contract. See Def's Ex. C.

Around December of 2012, Defendant sought to reduce the time needed to complete projects for its customers. See Danko Aff., Def. Ex. F.  With the input of Jim Danko, the head writer at BVI, Defendant issued the Writing Department Process Memorandum on February 6, 2013. See *id*. The memorandum provided guidelines for content and structure and established that the expected output of BVI writers was to be close to 1,000 words or three pages per hour, for a total of about 8,000 words per day. See Memorandum, Def's Ex. G; see also Guyon Deposition, Def's Ex. D, 71. Actual output could vary and there was flexibility for writers depending on their task. See *id*. Plaintiff claims the 8,000 word-per-day requirement represented a significant increase over the expectations when she was hired. Def's Ex. D, 48. Prior to the release of the memorandum, however, BVI personnel observed that Plaintiff was routinely taking longer to complete assignments than the other full time writers. See Def. Ex. F.

Following the release of the memorandum, Plaintiff teleconferenced with the two other full time writers at BVI to discuss the new guidelines and output expectations. During this conversation, Plaintiff expressed her dissatisfaction with the production pace writers were expected to attain. See Def's Ex. D, 23–24.

On March 14, 2013, Plaintiff wrote to Mr. Danko explaining that the fastest pace she could achieve was 2.5 pages per hour and working at this pace had caused her to experience significant pain in her wrists and severe tension headaches. See Danko Email, 2/13/2013, Def's Ex. B, 14. Two days later, on March 15, 2013, Plaintiff wrote to Paige Gore, Defendant's Human Resources Manager, explaining that the increased production requirements had caused Plaintiff to experience significant pain and stiffness in her wrists and she would often get tension headaches as well. See Gore Email, 3/15/2013, Def's Ex. B, 12–13. Plaintiff explained that it was not the length of time she spent writing that caused her pain, but rather the "accelerated pace." *Id*.  Responding via email, Ms. Gore disagreed that there was any "accelerated" production pace, clarifying that the expected output was merely based on industry standards and production goals. Gore Email, 3/18/2013, Def's Ex. B, 16.  Ms. Gore also reminded Plaintiff that the goal was somewhat flexible. *Id*.  Turning to Plaintiff's reported injury, Ms. Gore informed Plaintiff that Defendant's worker compensation carrier would be notified of Plaintiff's issues. *Id*.

Soon thereafter, Defendant provided Plaintiff with an insurance claim number for Plaintiff to use at any appointments related to her injuries. See Def's Ex. B, 38. Plaintiff visited her primary care physician on March 26, 2013, and the following day forwarded to Defendant a Work Capabilities Form signed by her doctor. The form indicated that Plaintiff should stay at a 2,000 words-a-day limit until her symptoms resolved. See Work Capabilities Form, 3/26/13, Def's Ex. J. Ms. Gore responded the same day expressing her understanding that Plaintiff could only work one to two hours a day based on BVI's expected output, and informed Plaintiff that she would be placed on a schedule of 9-11am, Monday-Friday, effective immediately. Def's Ex. B, 43. Ms. Gore further explained that Plaintiff would have to put in a claim for lost work time to Defendant's workers' compensation insurance carrier.  *Id*.

On March 28, 2013, Plaintiff faxed Defendant a second Work Capabilities Form, dated March 27, 2013, where Plaintiff's doctor expressed a more specific fine hand manipulation limitation: "typing—needs to stay at 2,000 word limit per regular 8 hour day, M-F only." Work

Capabilities Form, 3/27/13, Def's Ex. M. The fax was forwarded to Defendant's insurance carrier. Def's Ex. B, 45–46.

Through email and phone conversations, Plaintiff expressed that she was unwilling to accept reduced hours, but rather was asking for a full time employment at the reduced production rate prescribed by her doctor. See Def's Ex. D, 69–72. In further correspondence with Plaintiff, Ms. Gore explained that Defendant did not have a light duty position equivalent to what Plaintiff was requesting available, and Defendant was under no obligation to create such a position. Def. Ex. B, 47. Ms. Gore further explained, because Plaintiff could not meet BVI's expected output requirements Plaintiff should stop working immediately, and if Plaintiff could not return to full duty within one week she should return all company property including the iMac computer she was provided by Defendant. *Id*. Ms. Gore also informed Plaintiff that her health insurance would terminate as of April 5, 2013 if she did not return to work by that date. See Def. Ex. B, 48.

In a letter on April 5, 2013, Plaintiff informed Defendant of her diagnosis of tendonitis in her wrist, her current course of treatment, and her expected 6–8 week recovery. Def. Ex. B, 51. Plaintiff also recounted her understanding of Defendant's previous communications that Defendant would not accommodate her injury and, as Plaintiff could not return to full capacity work on that day, April 5, 2013, she had been effectively terminated. *Id*. Plaintiff requested Defendant inform her in writing that she he had been terminated and provide a severance package, including the equivalent of 12 weeks' salary, continued insurance coverage through July 15, 2013, and the iMac computer. *Id*.

On April 8, 2013, Defendant's counsel at the time, Mr. Morelli, responded to Plaintiff's April 5 letter and explained that she had not been terminated but that her pending workers' compensation claim and all wages and medical bills would be processed by Defendant's insurance carrier. See Morelli Letter, 4/8/13, Def. Ex. P. Additionally, Mr. Morelli requested that Plaintiff return all of Defendant's property. *Id*.

In an email response that same day, Plaintiff requested clarification about the status of her employment; inquiring why it was necessary for her to return the computer if she had not been terminated and why her health benefits were being terminated. See Email, 4/8/2013, Def's Ex. B, 53–54. Plaintiff further expressed her wish to be reinstated to her former full time position with the restrictions imposed by her physician. See *id.* Mr. Morelli's reply dismissed Plaintiff's inquiry with, "I could not have been any clearer in my previous letter," and again requested return of the computer, asserting that she had been "unambiguously directed to return your employer's property by Fed Ex." See Morelli Letter, 4/10/2013, Def. Ex. Q. He did not provide any further clarification about Plaintiff's employment status.

Later in April, Plaintiff's claims for unemployment compensation were initially denied by the Vermont Department of Labor based on a finding that Plaintiff had voluntarily quit Defendant's employment. See Unemployment Compensation Determination, 6/16/2013, Def's Ex. S. On appeal, the administrative law judge found Plaintiff was eligible to receive unemployment as her work place injury had prevented her from performing the essential functions of her job. Jennifer Davis, Administrative Decision, 6/28/2013, Def's Ex. T. Through a settlement agreement approved by the Department of Labor and Industry, Plaintiff also

3

received $3,500 in workers' compensation benefits plus $2,631.46 in covered medical expenses. See Settlement Agreement, 11/12/2013, Def's Ex. L.

On or about April 7, 2013, Plaintiff restored the iMac computer to its factory settings. See Pl's Opp. to Def's Motion *In Limine*, 5/28/2015, 1. Plaintiff did not return the computer to Defendant until October of 2013. *Id*. at 2.

On July 17, 2013, Plaintiff filed her complaint, which was later amended for a second time in October of 2014 to assert a total of five claims including: I) Breach of Contract; II) Wrongful Termination; III) Unlawful Discrimination; IV) Unlawful Discrimination Against a Disabled Individual; and V) Violation of the Vermont Family and Medical Leave Act.[1]

On December 1, 2014, Defendant moved for summary judgment on all of Plaintiff's claims. In Plaintiff's opposition to summary judgment, she concedes that summary judgment should be granted as to claims II, IV, and V. Therefore, the Court considers claims II, IV, and V dismissed.

In a separate small claims action, Defendant had sought damages for the wrongful conversion of Defendant's property. On October 9, 2013, the matters were consolidated and the small claims complaint was added as a counterclaim in this action. On March 16, 2015, Defendant moved for judgment as a matter of law on its counterclaim. Defendant has also filed a motion *in limine* seeking sanctions for Plaintiff's alleged spoliation of evidence.

Now before the Court is Defendant's motion for summary judgment on Plaintiff's remaining two claims for breach of contract and unlawful discrimination, Defendant's motion *in limine* for spoliation sanctions, and Defendant's motion for judgment as a matter of law on its counterclaim. The Court addresses each in turn.

## DISCUSSION

### A. Summary Judgment

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The Court makes all reasonable inferences and resolves all doubts in favor of the non-moving party. *Lamay v. State*, 2012 VT 49, ¶ 6, 191 Vt. 635. Nevertheless, the non-moving party cannot rely solely on the pleadings to rebut credible evidence. *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 5, 175 Vt. 413. If the non-moving party fails to challenge the movant's statement of material facts, the Court will take the movant's facts as true. *Webb v. Leclair*, 2007 VT 65, ¶ 4, 182 Vt. 559. Mere assertions are inadequate to raise questions of fact; the non-moving party must provide "affidavits or other documentary evidence sufficient to call

---

[1] Defendant contends that the complaint was never properly amended and Plaintiff's late response of her opposition to summary judgment should preclude the Court from considering the Second Amended Complaint or Plaintiff's opposition to summary judgment. Any delay in filing was minimal and the Court treats Plaintiff's complaint as properly amended, therefore the Court will address the claims as Plaintiff has framed them in her latest complaint and opposition to summary judgment.

4

into question the existence of the factual basis for the claim." *Miller v. Merchants Bank*, 138 Vt. 235, 237 (1980).

### I.    *Breach of Contract*

Plaintiff asserts that Defendant breached its contract with Plaintiff by failing to compensate her for the value of accrued vacation days after Defendant terminated her employment. Plaintiff does not, however, explain the source of this contractual duty, but rather argues that because the Employee Policy Manual is silent on compensation due terminated employees, a genuine issue of material fact exists whether it was Defendant's policy to provide such compensation. Plaintiff requests that the Court stay the current motion for summary judgment to allow further discovery on the issue.

Defendant first disputes that Plaintiff was ever terminated, arguing that Plaintiff resigned without giving ten days' notice and thus no discretionary compensation for accrued vacation time would be considered. Resolving all doubts in favor of the non-moving party, for the purposes of Plaintiff's breach of contract claim, the Court accepts that Plaintiff was terminated. Yet, Defendant further argues that terminated employees have no contractual right to compensation for accrued vacation time; the Employee Policy Manual is silent, Defendant denies any representation that could form the basis of a contract, and Plaintiff has established no evidence of any such contractual foundation.  Therefore, even accepting that Plaintiff was terminated, Plaintiff's claim fails. Defendant opposes Plaintiff's request to extend discovery, arguing that Plaintiff has failed to show "for specified reasons" that she cannot present "facts essential to justify [her] opposition" to summary judgment, therefore no extension is warranted. See V.R.C.P. 56(d). For the following reasons, the Court concludes that Plaintiff has failed to demonstrate that material facts remain in dispute and therefore Defendant is entitled to judgment as a matter of law.

The Employee Policy Manual, under the heading "Resignation," states:  "In the event notice is given, employees are entitled to receive all earned, but unused vacation. If notice is not received, unused vacation will not be paid." Employee Policy Manual, Def's Ex. H, at 20. Notice is defined as ten "complete working days without any absences, including holidays." *Id*. The Policy Manual is silent, however, about whether an employee is entitled to receive compensation for unused vacation in the event the employee is terminated. *Id*.

Plaintiff does not claim that Defendant made some representation, other than the language of the Policy Manual, suggesting she would be entitled to such compensation. Nor does Plaintiff provide any legal authority establishing that an employee, in an employment at will context,[2] can reasonably expect to receive compensation for accrued vacation time if they are terminated. See *Ross v. Times Mirror*, 164 Vt. 13, 18 (1995).  While the Employee Manual addresses the situation of voluntary resignation with advance notice, the Manual is completely silent about vacation days when the employee is terminated. Such silence cannot be deemed to afford Plaintiff an affirmative contract right. *Id*.

---

[2] It is undisputed that Plaintiff was an at-will employee.

Plaintiff's generalized assertion that additional discovery is necessary to determine whether it was Defendant's policy to provide compensation to terminated employees is insufficient to preclude summary judgment. Plaintiff has had significant time to conduct discovery and her request to further extend what has already been a lengthy process "fail[s] to articulate precisely what material facts essential to [her] opposition remains undiscovered." *State v. Howe Cleaners*, 2010 VT 70, ¶ 47, 183 Vt. 303.

Even assuming that Plaintiff was terminated from her employment with BVI, Plaintiff fails to identify anything in the record to support the claim that she had a contractual right to receive compensation for accrued vacation days. Therefore, the Court concludes that as a matter of law Plaintiff has failed to establish that Defendant breached any contract, written or oral, by not compensating Plaintiff for unused vacation days.

### II. Unlawful Discrimination

Plaintiff also asserts a claim of retaliatory discrimination under 21 V.S.A. § 495(a) and 21 V.S.A. § 710(b), alleging that Defendant discriminated against her by terminating her employment in response to her workers' compensation claim and by refusing to accommodate her injury.

Under 21 VSA § 710(b) and 21 V.S.A. § 495(a)(8), an employer is prohibited from discriminating or otherwise retaliating against an employee for asserting a protected right, such as filing a workers' compensation claim. To make out a retaliatory discrimination claim that will survive summary judgment, a plaintiff must present a prima facie case that (1) she was engaged in a protected activity, (2) the defendant was aware of that activity, (3) she suffered an adverse employment decision, and (4) there was a causal connection between the protected activity and the adverse employment decision. See *Murray v. St. Michael's College*, 164 Vt. 205, 210 (1995). If the plaintiff can make out a prima facie case, the defendant must offer some "some legitimate, nondiscriminatory reason for the challenged conduct." *Id*. If the defendant articulates such a reason, the plaintiff must prove that the defendant's offered reason was mere pretext. *Id*

There is no dispute here that Plaintiff engaged in a protected activity by filing a workers' compensation claim, and that Defendant was aware of that claim. The dispute initially centers on whether there was an adverse employment decision. Defendant maintains summary judgment should be granted because there was no adverse employment decision since Plaintiff was not terminated, but voluntarily resigned. In opposition, Plaintiff claims that she was terminated either explicitly or constructively.

"In determining whether a separation from employment is a discharge or a voluntary quit," the Court is to look at "the intent of the parties at the time of the separation." *Kelley v. Department of Labor*, 2014 VT 74, ¶ 10, 101 A.3d 895. Viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude, based on the record before it, that Plaintiff intended to quit her employment on March 28, 2013, the last day she worked. Therefore, the Court accepts for the purposes of this claim that Plaintiff was terminated.

A finding that Plaintiff was terminated, however, does not end the inquiry. Rather, as the Court explained in *Murray*, once a prima face case is established Defendant may offer a non-discriminatory reason for the termination. See *Murray*, 164 Vt. at 210. Defendant has offered such a reason, claiming it was entitled to request that Plaintiff stop working because her injury prevented her from meeting the productivity expectations of a full time staff writer at BVI. See 21 V.S.A. § 710(b) ("Nothing in this section shall require a person to employ an applicant who does not meet the qualifications of the position sought.").

Plaintiff contends that even at the 2,000 word-per-day limitation prescribed by her doctor, she could have met production expectations of a full time staff writer, and thus it was improper for Defendant to terminate her employment and refuse to offer her an available alternative position. Such a claim, however, is unconvincing and fails to challenge the material facts presented. As Plaintiff concedes, she was having trouble meeting the expected output when working at full capacity, and once her wrists started to hurt, her productivity greatly decreased. See Pl's Ex. B, 12, 14. Nevertheless, Plaintiff argues that the target production rate of 3 pages per hour at roughly 350-500 words per page was merely a goal, but depending on the project, actual production would often be lower. Extrapolating from that proposition, Plaintiff reasons that productivity expectations could be as low as 2,400 words per day on the more complex projects, which is not far off from her limitation while injured. Therefore, Plaintiff argues, Defendant could have continued to employ Plaintiff as a full time staff writer without creating a light duty position.

The hypothetical scenario that on a given day, when conducting more complex research tasks, a full time writer at BVI might only produce 2,000 words does create a dispute of material fact of whether a position was readily available for Plaintiff with her limitation. See *Thurber v. United Parcel Service, Inc.*, No. 2:05–cv–159, 2007 WL 3046261 at *5 (D. Vt. Oct. 16, 2007) (finding allegation that employer may have temporarily accommodated other employees failed to prove that employer failed to offer a suitable position to an injured worker). Defendant had set a standard that governed all full time writers, and while exceptions on a case by case basis could be made, Plaintiff's limitation would have limited her to one quarter of the expected output for weeks. Without some more definitive evidence that a position was in fact available, Plaintiff's claim fails to challenge the evidence supplied by Defendant demonstrating that Plaintiff's limitation prevented her from performing the essential functions of her job. See *Miller v. Merchants Bank*, 138 Vt. 235, 237 (1980). Indeed, Defendant offered Plaintiff a part time position, but Plaintiff rejected this offer requesting full time employment.

Plaintiff repeatedly asserts that Defendant's production requirements represented a significant increase or "accelerated pace" over what she was initially hired to perform. Regardless of the veracity of her claim, an employer is not precluded from raising work standards during an at-will employee's tenure where there is no contract provision prohibiting such action. See *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 19–20 (1995). Ultimately, because Plaintiff has failed to rebut Defendant's non-discriminatory reason for Plaintiff's termination — Plaintiff's inability to carry out the duties of her position due to a workplace injury — there was no violation of 21 V.S.A. 710(b) or 21 V.S.A. § 495(a)(8). See *Wentworth v. Fletcher Allen Health Care*, 171 Vt. 614 (holding that 21 V.S.A. § 710(b) does not preclude an employer from terminating an employee "who is unable to who is unable to carry out the duties of her position due to an occupational injury.").

For the foregoing reasons, the Court concludes that Plaintiff's unsupported allegations fail to raise a dispute of material facts, and therefore, Defendant's motion for summary judgment is **GRANTED**.

### B. Spoliation Sanctions

The Court denies Defendant's motion for spoliation sanctions. Plaintiff was not in violation of any Court order by restoring the computer to its factory settings. See V.R.C.P. 37. Moreover, there is no support for Defendant's assertions that Plaintiff could have reasonably anticipated litigation on April 7, 2013, that Plaintiff had a culpable state of mind on that date, or that the computer files would have been relevant to the current litigation.

On the date Plaintiff restored the computer to its factory settings, April 7, 2013, she had only been directed by Defendant to return the computer once a valid prepaid label arrived. The Court cannot conclude that based on that communication alone, a duty to preserve evidence had arisen. Therefore, Defendant's motion is **DENIED.**

### C. Wrongful Conversion

Defendant has counterclaimed against Plaintiff seeking damages of $1,644.72 for the unlawful conversion of the iMac computer that Plaintiff retained until October of 2013. Defendant has now moved for judgment as a matter of law on its unlawful conversion claim.

A party may move at any time for judgment as a matter of law and "such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment." See V.R.C.P. 50(a)(2). Judgment as a matter of law will only be granted when there is no legally sufficient basis for a reasonable jury to find for the non-moving party. See *Perry v. Green Mountain Mall*, 2004 VT 69, ¶ 7, 177 Vt. 109. Based on the law and facts submitted by Defendant in connection with its motion for judgment as a matter of law on the counterclaim, and granting the non-moving party every favorable inference, the Court cannot conclude that there is no legally sufficient basis for a reasonable jury to find for Plaintiff. Therefore, Defendant's motion for judgment as a matter of law on its counterclaim for wrongful conversion of property is **DENIED**. Because the counterclaim remains the only pending claim following the entry of summary judgment against Plaintiff on the complaint, it will be transferred back to small claims court for trial.

**WHEREFORE,** it is hereby **ORDERED**: Defendant's motion for summary judgment is **GRANTED,** and Defendant shall submit a proposed form of judgment. Defendant's motion for spoliation sanctions is **DENIED**. Defendant's motion for judgment on the pleadings on its counterclaim is **DENIED**, and the claim is transferred to Small Claims Court for trial.

8

Electronically signed on July 22, 2015 at 10:11 AM pursuant to V.R.E.F. 7(d).

_____

John P. Wesley
Superior Court Judge

Notifications:
Neutral Mediator/Arbitrator/Evaluator Thomas P. Aicher
Stephen D. Ellis (ERN 3106), Attorney for Defendant Intake Advantage, Inc.
Stefan Ricci (ERN 3746), Attorney for Plaintiff Anne L. Guyon