VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 22-CV-02366



Paul Westcott
     Plaintiff

v.

Mack Molding Co., Inc.
     Defendant

<u>Decision on Cross-Motions for Summary Judgment</u>

Plaintiff Paul Westcott was employed by defendant Mack Molding Co. for more than thirty years. He was fired in July 2019 after making misrepresentations to the company human-resources director about whether he had made electronic recordings in the workplace. At issue is whether he has adduced sufficient evidence to show that there are genuine issues for trial on his claims for retaliatory discharge, breach of contract, and promissory estoppel. *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The following facts are set forth in the light most favorable to plaintiff. Vt. R. Civ. P. 56(c); *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272; *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356. During his employment with the company, plaintiff became friends with two other company employees: Angela Gates and Donald Gates. In 2015, Ms. Gates took a leave of absence from work, and she thereafter became involved in a dispute with the company about various legal protections, benefits, and leave balances. Her employment was terminated in 2016, and she sued the company for employment discrimination. See *Gates v. Mack Molding Co., Inc.*, 2022 VT 24, ¶¶ 2–11, 216 Vt. 379 (describing factual allegations and procedural history of Ms. Gates' lawsuit).

Mr. Gates and plaintiff then began bringing electronic recording devices to the workplace in order to document what they perceived as discriminatory practices. Mr. Gates was eventually suspended, and then fired for making these recordings. He, too, sued the company for employment discrimination. See *Gates v. Mack Molding Co., Inc.*, No. 23-CV-02626 (Vt. Super. Ct. Mar. 25, 2024) (Teachout, J.) (describing factual allegations and procedural history of Mr. Gates' state-court lawsuit); *Gates v. Mack Molding Co., Inc.*, 2023 WL 4181945 at *2 (D. Vt. Mar. 27, 2023) (describing factual allegations and procedural history of Mr. Gates' federal-court lawsuit).

Plaintiff assisted Mr. Gates and Ms. Gates in three specific ways. First, he wrote a letter to the company in 2016 in support of Ms. Gates. His letter explained that she was "a really hard worker and one of the better molders," and he expressed his view that she had been injured at work. His letter did not otherwise mention issues of fair employment practices or discrimination. Second, he assisted Mr.

Gates and others at the company in making recordings in the workplace. He did this because he did not trust management and wanted others to be able to document the words and actions of the managers. Finally, he made his own recordings in the workplace.

Plaintiff's own recordings began in 2018. At the time, he had suffered a knee injury, and he had submitted a "first report" regarding the injury, which resulted in an evaluation by the company physician. Plaintiff used his electronic recording device during this evaluation, without disclosing to the physician or any other company representative that he was making the recording. At the end of the evaluation, while still making a recording of the events, he spoke to the company human-resources director. During that conversation, the human-resources director asked plaintiff whether he was "recording this conversation," and plaintiff answered that he was "not." See Plaintiff's SMJ Exhibit 25, at pp. 53–54. The human-resources director then explained that recording conversations at work was "not permitted," *id*., and that he did not have her permission to be making a recording of their conversation, *id*.

Defendant learned about this recording in May 2019, when a copy of the recording was provided as part of a discovery disclosure made by Ms. Gates's attorney in her civil case. See *Gates v. Mack Molding Co., Inc.*, No. 317-11-17 Bncv (Vt. Super. Ct. Aug. 15, 2019) (Barra, J.). The company human-resources director thereafter wrote to plaintiff and requested a meeting about "recording conversations," and plaintiff responded by leaving a voicemail message for the human-resources director (which he recorded) and then speaking briefly on the telephone with her (which he also recorded, without disclosing to her that he was recording the conversation). See Defendant's Statement of Material Facts at ¶¶ 60–61; Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at ¶¶ 60–61 ("UNDISPUTED BY PLAINTIFF").

Plaintiff then met with the human-resources director in person on July 3, 2019. Plaintiff recorded this conversation without informing the human-resources director that he was doing so. See Defendant's Statement of Material Facts at ¶ 65; Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at ¶ 65 ("UNDISPUTED BY PLAINTIFF"); Plaintiff's Statement of Material Facts at ¶ 23. During that conversation, the human-resources director asked plaintiff whether he was recording their conversation, and he answered untruthfully that he was not. See Defendant's SMJ Exhibit B, at pp. 269–70. The human-resources director further explained that she did not consent to any recording, *id*. at 271, and asked plaintiff one more time whether he was recording the conversation, to which he answered untruthfully that he was not, *id*. at 311; see Defendant's Statement of Material Facts at ¶¶ 65–67 & 71; see also Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at ¶¶ 65–67 & 71 (undisputed as to these facts, and disputed in part on other grounds).

Following this conversation, the company learned that plaintiff had lied during these conversations. Defendant thereafter fired plaintiff for lying to the human-resources director about his recording activity. See Defendant's Statement of Material Facts at ¶ 72; see Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at ¶ 72 ("UNDISPUTED BY PLAINTIFF").

Plaintiff has alleged in his complaint that his termination amounted to impermissible retaliation for engaging in protected activities under the Vermont Fair Employment Practices Act and the Workers' Compensation Act. A retaliation claim under either statute requires the plaintiff to show that (1) they were engaged in protected activity, (2) the employer was aware of the activity, (3) the employee suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *Hammond v. University of Vermont Medical Center*, 2023 VT 31, ¶ 38; *Gates*, 2022 VT 24, ¶ 39; *Beckmann v. Edson Hill Manor, Inc.*, 171 Vt. 607, 608 (2000) (mem.); *Gates*, No. 23-CV-02626 (Vt. Super. Ct. Mar. 25, 2024).

Anti-retaliation provisions in employment-discrimination statutes are intended to prohibit "employer actions that are likely to deter victims of discrimination from complaining" to relevant officials. *Argyropolous v. City of Alton*, 539 F.3d 724, 732–33 (7th Cir. 2008) (internal citations and quotations omitted). Anti-retaliation provisions typically make it unlawful for employers to discriminate against employees who have "opposed" unlawful employment practices, as well as against those who have made allegations, testified, or otherwise participated in investigations, proceedings, or hearings related to employment discrimination. *Crawford v. Metropolitan Gov't of Nashville and Davidson County*, 555 U.S. 271, 274 (2009).

Here, plaintiff has identified his "protected activities" as making recordings at work, and assisting other employees in making recordings for the purpose of gathering evidence for legal proceedings involving claims of illegal employment practices. Although the Vermont Supreme Court has not ruled on this situation, both the federal District Court of Vermont and the Vermont Superior Court have recently concluded as a matter of law (under the standard applicable to motions to dismiss for failure to state a claim upon which relief can be granted) that making secret recordings of workplace conversations with one's supervisors or co-workers does not constitute protected activity. *Gates*, 2023 WL 4181945 (D. Vt. Mar. 27, 2023); *Gates*, No. 23-CV-02626 (Vt. Super. Ct. Mar. 25, 2024). A number of other courts have reached the same conclusion under summary-judgment standards of review. See *Argyropolous*, 539 F.3d at 734 (explaining that although Title VII "indubitably protects an employee who complains of discrimination," the statute "does not grant the aggrieved employee a license to engage in dubious self-help tactics or workplace espionage in order to gather evidence of discrimination"); *Spagnolia v. Charter Communications, LLC*, 2023 WL 3317781 at *14 (D. Colo. May 5, 2023) (explaining that "secretly recording meetings with [] supervisors is not protected activity," and citing numerous cases in support of the holding). The court finds these decisions to be persuasive, and adopts the reasoning of the *Gates* decisions.

Plaintiff has not pointed the court towards any favorable decisions of a court interpreting either federal or state employment-discrimination statutes. Instead, plaintiff has relied upon the general rule that single-party recording is not prohibited by law, and upon cases from Labor Relations Boards discussing just-cause terminations and collective-bargaining contracts. However, general rules about permissible activities do not provide helpful guidance about whether those otherwise-permissible activities are "protected activities" within the meaning of anti-retaliation statutes. It is surely permissible, for example, for an employee to write a letter to a supervisor about workplace concerns, but that does not mean that such a letter is always a "protected activity" for purposes of anti-retaliation statutes. See, e.g., *Cook v. CBS, Inc.*, 47 Fed. Appx. 594, 596–97 (2d Cir. 2002) (holding that employee's letter to the supervisor was not a "protected activity" because it did not allege any discriminatory practices). Likewise, there are no union contracts in this case, and the just-cause

termination standards do not apply. Although plaintiff argues that his failure to cite to favorable anti-retaliation decisions is evidence of the novelty of the issue, the cases cited in the preceding paragraph are to the contrary, and establish instead a general consensus that making recordings within the workplace and assisting others in doing so are not "protected activities" for purposes of anti-retaliation laws.

Plaintiff also alleges that he engaged in a protected activity by writing a letter to the company in 2016 in support of his coworker. An allegation to this effect was not included in the complaint, but plaintiff referenced this letter at oral argument when asked to clarify the allegedly-protected activities in which he engaged. A review of the letter shows that it referenced a belief that Ms. Gates had been injured at work, but that it did not make any allegations of wrongful employer conduct, e.g., *Cook*, 47 Fed. Appx. at 596–97, and in any event the letter was sent more than three years before plaintiff was eventually fired. The temporal relationship between the letter and the allegedly retaliatory action is far "too attenuated" to support an inference of a causal connection between the two events. See, e.g., *Bucalo v. Shelter Island Union Free Sch. Dist*., 691 F.3d 119, 131 (2d Cir. 2012) (explaining that the temporal relationship is typically measured "as a matter of months, not years"); accord *Robertson*, 2004 VT 15, ¶ 47; *Sirois v. Long Island Railroad Co*., 797 Fed. Appx. 56, 60 (2d Cir. 2020); *Mills v. Southern Connecticut State Univ*., 519 Fed. Appx. 73, 76 (2d Cir. 2013).

An independent ground for decision is that plaintiff does not dispute that he was fired not for sending a letter in 2016, nor for making recordings at work, nor for assisting others in making recordings at work, but rather for lying to the human-resources director about whether he had recorded their conversations. See Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at ¶ 72 ("UNDISPUTED BY PLAINTIFF"). Plaintiff has also conceded the predicate facts upon which that termination decision was based. See Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at ¶¶ 65–67 & 71 (undisputed as to the material facts; disputed in part on other grounds). For this reason, the employment decision was based on a legitimate non-protected reason, and plaintiff has failed to establish a causal connection between the adverse employment action and any of the allegedly-protected activities in which he engaged. See *Gauthier v. Keurig Green Mountain, Inc*., 2015 VT 108, ¶¶ 22–29, 200 Vt. 125 (explaining that an employer's decision to terminate based on employee misconduct need only be "honest" if it is based upon legitimate, non-retaliatory reasons); *Paca v. City of New Haven*, 826 Fed. Appx. 46, 48–49 (2d Cir. 2020) (holding that plaintiff failed to establish a retaliation claim where he was fired for lying to the company and for his "own unsatisfactory conduct" rather than for having assisted his spouse in her dispute with the company).

For these reasons, the court enters summary judgment for defendant on the claims for retaliatory discharge.

Plaintiff also alleges in his complaint that his termination amounted to a breach of contract. He acknowledges that his employment was at-will, but he contends that defendant's employee handbook provided certain protections, and that these promises were breached when defendant fired him for "recording his conversations" with the company's management team, and for providing assistance to Ms. Gates and Mr. Gates in "making recordings of their own." In other words, as clarified at the oral argument, plaintiff's breach-of-contract claim is that defendant breached an implied employment contract by retaliating against him for engaging in protected activity. For the same reasons as above,

plaintiff has failed as a matter of law to establish that he engaged in any protected activity. Summary judgment is therefore likewise appropriate on the claim for breach of contract.

Finally, plaintiff contends that defendant modified his employment contract by promising to provide him with up to 26 weeks of short-term disability leave, and by promising that he could "count on having a job if he was medically cleared to return to work within 26 weeks." Here, plaintiff's references are to conversations that he had with the human-resources director with respect to his knee injury, and certain representations that she made during those conversations about the company's short-term disability procedures. In this case, however, as discussed above, plaintiff was not fired for any reasons related to his medical disabilities, but rather because he lied to the human-resources director about whether he had been recording their conversations. As such, no causal connection exists between the medical-disability issues and the reason for his termination. In any event, it is also undisputed that the company's employee handbook contains a provision requiring that any enforceable promises regarding employment be made in writing by the company president, and that the promises alleged by plaintiff were not written promises from the company president but rather verbal statements made by the human-resources director. Given this concession, the statements do not create a genuine issue for trial. See, e.g., *Smith v. Shaw's Supermarkets, Inc.*, 2019 WL 1436660 at *8 (D. Vt. Apr. 1, 2019) (explaining that a company-handbook provision requiring company-president approval of any alterations to the at-will employment status of an employee "eliminates any claim that any other employee could modify the at-will relationship and provide plaintiff with an 'enforceable promise of specific treatment in a specific circumstance'") (quoting *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 22 (1995)). For these reasons, the court enters summary judgment for defendant on the claim for promissory estoppel.

A few final observations are appropriate. First, plaintiff has contended that there is a disputed issue as to whether defendants maintained an employment policy regarding the making of recordings in the workplace. A review of the statements of material facts and the supporting evidence shows some disputes about exactly when workplace policies regarding recordings were edited or changed (although plaintiff's own statement of material facts asserts that the policies were in place as early as 2016), and about the procedures by which employees are made aware of workplace policies. It is the court's conclusion, however, that these disputes are not material to the determination about whether the recording was a protected activity. As explained above, the cited authorities do not indicate that the legal conclusion rests upon any of these distinctions, e.g., *Gates*, 2023 WL 4181945; *Gates*, No. 23-CV-02626; *Argyropolous*, 539 F.3d at 734; *Spagnolia*, 2023 WL 3317781. Additionally, as mentioned throughout this opinion, plaintiff does not dispute that he was fired not for making recordings, but rather for lying to the human-resources director about whether he had made them. A termination based upon this legitimate, non-protected reason does not require findings about the underlying recording policies.

Second, although the parties' briefing and statements of material fact dealt with many issues related to implied employment contracts, e.g., *Ross v. Times Mirror, Inc.*, 164 Vt. 13 (1995), plaintiff clarified at oral argument that the breach-of-contract claim was based upon the employer's inclusion of anti-retaliation provisions in the employment handbook. For this reason, the court does not find it necessary to detail the various recitations regarding plaintiff's course of employment and corrective-action history. To the extent that the court's view on the subject is helpful, the court concludes separately and independently that the various representations in the handbook and the employment

"code of conduct" made clear that plaintiff's at-will employment could be terminated "at any time and for any reason with or without cause or notice," and that conduct violations could provide the basis for termination of employment without any forms of prior corrective action. See Defendant's Statement of Material Facts at ¶ 11; Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at ¶ 11 (disputed in part on other grounds).

Third, in this opinion, the court has not relied upon any inferences to be drawn from the conduct of counsel in the companion cases, though considerable attention was paid to this in the briefed submissions. Plaintiff is entitled to have his case decided upon the merits of his own case. Likewise, although the court has drawn persuasive legal support from the opinions of Judge Crawford and Judge Teachout in the *Gates* litigation, the court has not determined any material facts from the findings made in those cases. It is the court's conclusion that plaintiff has failed to demonstrate a genuine issue for trial based upon the evidence presented in this case, and the legal conclusions to be drawn from that evidence.

Fourth, plaintiff's cross-motion for summary judgment was evaluated "on an individual and separate basis." 10A Wright & Miller, Federal Practice and Procedure: Civil 4th § 2720. Plaintiff sought a determination that he engaged in protected activity as a matter of law. For the same reasons as discussed above, the court's conclusion is that plaintiff is not entitled to a ruling in his favor on this issue.

Finally, the court appreciated the presentations of counsel at the oral argument. The court scheduled the oral argument because it had specific questions following its review of the briefed submissions, and the responses of counsel were of material assistance in the preparation of this opinion.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Motion #4), filed November 3, 2023, is granted, and Plaintiff's Cross-Motion for Summary Judgment (Motion #5), filed November 3, 2023, is denied. A separate final judgment order will issue.

Electronically signed on Friday, May 3, 2024 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge

Vermont Superior Court
Filed 05/03/24
Windsor Unit